UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANE STEVENS,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:12-cv-977

## **OPINION**

    This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. On February 19, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #12).

    Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 41 years of age on his alleged disability onset date. (Tr. 133). He successfully completed high school and worked previously as a mobile home repair person. (Tr. 24-25). Plaintiff applied for benefits on April 17, 2009, alleging that he had been disabled since January 1, 2009, due to obesity, back pain, shortness of breath, and sleep apnea. (Tr. 133-39, 160). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 81-132). On June 14, 2011, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Paul Delmar. (Tr. 31-80). In a written decision dated August 9, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 17-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On August 10, 2009, Plaintiff participated in a sleep study the results of which revealed that he was experiencing "severe obstructive sleep apnea with mild oxygen desaturation." (Tr. 272-73).

3

On September 25, 2009, Plaintiff participated in a consultive examination conducted by Dr. Tama Abel. (Tr. 253-57). Plaintiff reported that he was disabled due to "severe obesity causing leg problems, shortness of breath, back pain, and sleep apnea." (Tr. 253). Plaintiff reported that his current weight was "around 500 pounds," but that he "has not been weighed accurately on a scale for many years." (Tr. 253). Plaintiff reported that he is "able to drive and is independent with his activities of daily living." (Tr. 253). The results of an examination revealed the following:

> The patient was right-handed. There was no tenderness, erythema, or effusion noted of any joint. Grip and pincher strength was intact. Dexterity appeared unimpaired. There was no edema. He had severe difficulty getting on and off the examination table, needing a chair for support and tipping the table slightly as he stepped, mild difficulty heel walking, stated he could not toe walk, would not attempt squatting and arising, mild difficulty balancing, would not attempt hopping, and attempted the tandem walk but could not perform this activity as a result of his severe morbid obesity and inability to hold his legs close enough together. Range of motion testing of all joints was performed and was abnormal in a number of joints as the result of physical inability to achieve full range because of his severe morbid obesity. Bandaging was noted on both lower extremities from the ankles to the knees, which was not removed for examination. The patient denied the presence of sores or ulcers. No drainage was noted on the bandaging. Rubor was noted on both feet involving the toes which did not demonstrate swelling or induration, consistent with chronic venous stasis changes. Lower extremity circumference did not appear significantly out of proportion to the rest of his body and its associated severe morbid obesity. Changes associated with brawny edema were not observed; examination of the lower extremities was sub-optimal. . .Motor and sensory function appeared intact. No disorientation was noted. Romberg testing was negative. Straight leg raising was negative in the seated and supine positions. No radiating pain was elicited. Position sense of both great toes was intact.

(Tr. 254-57).

Plaintiff also exhibited "shortness of breath with exertion [which] appeared to be as

4

a result of severe physical deconditioning and his severe morbid obesity[, but] respiratory limitations were not observed." (Tr. 257). The doctor also observed that Plaintiff walked with a "normal" gait and "did not use an assistive device for ambulation." (Tr. 254). In this regard, the doctor further reported that Plaintiff "was observed to walk several hundred feet down the hall and exit the building to his SUV without stopping after the examination [and] he was able to climb into the driver's side of the SUV without assistance." (Tr. 254).

On May 28, 2010, Plaintiff participated in an MRI examination of his lumbosacral spine the results of which revealed:

> Advanced multilevel degenerative disc disease and facet arthropathy greatest perhaps at L1-2 level. An acquired spinal canal stenosis at L1-2 due to the broadly protruding disc. Consider early caudal extension. Foramina however are patent. Right paracentral disc extrusion at L5-S1. Patent foramina. Grade 0 to one pseudospondylolisthesis of L4 on L5 due to severe facet arthritis bilaterally. Frontal stenosis on both sides.

(Tr. 288-89).

On March 24, 2011, Dr. Luis Vega completed a report regarding Plaintiff's ability to perform physical activities. (Tr. 322-23). The doctor reported that Plaintiff could occasionally lift and carry 10 pounds and could frequently lift and carry less than 10 pounds. (Tr. 322). The doctor reported that during an 8-hour workday, Plaintiff could stand and walk "less than" two hours and could sit for "about" four hours. (Tr. 322). The doctor reported that Plaintiff required a sit/stand option and would "sometimes need to lie down or recline at unpredictable intervals during an 8-hour working shift." (Tr. 322). The doctor reported that Plaintiff could rarely twist, stoop, or climb stairs and could never crouch or climb ladders. (Tr. 323).

5

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from (1) morbid obesity; (2) lumbar degenerative disc disease; (3) right foot heel spur; (4) lymphedema affecting bilateral feet and legs; (5) knee pain; and (6) sleep apnea, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19-22).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can lift and carry 10 pounds; (2) during an 8-hour workday (with normal breaks) he can stand/walk for two hours and sit for six hours; (3) he can perform pushing/pulling activities without limitation; (4) he can frequently balance; (5) he can occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs; and (6) he cannot climb ladders, ropes, or scaffolds. (Tr. 22-23).

The ALJ concluded that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Paul Delmar.

The vocational expert testified that there existed approximately 31,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 72-75). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

I.      **Section 1.04 of the Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts that he is entitled to relief because he satisfies the requirements of Section 1.04 of the Listing of Impairments.

Section 1.00 of the Listing addresses disorders of the musculoskeletal system, including those resulting from "degenerative processes, traumatic or developmental events." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.00. Plaintiff asserts that he satisfies Sections 1.04(A) and 1.04(C) which provide as follows:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root. . .or the spinal cord.

8

> [Combined w]ith:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or. . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[2]

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.

The ALJ specifically addressed whether Plaintiff satisfied this particular Listing. With respect to Section 1.04(A), the ALJ concluded that while Plaintiff suffers from spinal impairments, such do not satisfy the requirements identified immediately above. (Tr. 22). Specifically, the ALJ found that Plaintiff did not experience the requisite motor loss, sensory or reflex loss, and positive straight leg raising. (Tr. 22). As for Section 1.04(C), the ALJ noted that Plaintiff does not suffer from an inability to ambulate effectively as evidenced by Dr. Abel's observations. (Tr. 22). The burden rests with Plaintiff to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). The ALJ evaluated the scant evidence of record and determined that Plaintiff

---

[2] Section 1.00(B)(2)(b) defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02(B)(2)(b)(1). Ineffective ambulation "is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* To ambulate effectively, claimants "must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out the activities of daily living." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02(B)(2)(b)(2).

failed to meet his burden. The ALJ's decision in this regard is supported by substantial evidence.

In a related argument, Plaintiff argues that the ALJ was required to consult a medical expert with respect to this particular issue. The Court is not persuaded.

Plaintiff bears "the ultimate burden of producing sufficient evidence to show the existence of a disability." *Allison v. Apfel*, 2000 WL 1276950 at *5 (6th Cir., Aug. 30, 2000) (citations omitted). As the relevant Social Security regulations make clear, it is the claimant's responsibility to provide the evidence necessary to evaluate his claim for benefits. *See* 20 C.F.R. §§ 404.1512 and 404.1514. As the Supreme Court has observed, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Yuckert*, 482 U.S. at 2294 n.5.

Only under "special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, *and* is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record." *Trandafir v. Commissioner of Social Security*, 58 Fed. Appx. 113, 115 (6th Cir., Jan. 31, 2003) (emphasis added) (citations omitted); *Nabours v. Commissioner of Social Security*, 50 Fed. Appx. 272, 275 (6th Cir., Nov. 4, 2002) (citations omitted). Plaintiff was represented at the administrative hearing and there is no evidence that his counsel was incapable of advocating Plaintiff's position or was unfamiliar with the relevant hearing procedures. Thus, the Court finds that the ALJ was not under a heightened duty to develop the record in this matter.

The ALJ is not required to supplement the record with additional evidence unless the record as it then exists is insufficient to assess Plaintiff's residual functional capacity or otherwise resolve his claims. *See, e.g., Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir., Dec. 11, 2003);

*Haney v. Astrue*, 2010 WL 3859778 at *3 (E.D. Okla., Sept. 15, 2010); *Brown v. Commissioner of Social Security*, 709 F.Supp.2d 248, 257 (S.D.N.Y. 2010); *Allison*, 2000 WL 1276950 at *5. Because the record was sufficient to resolve Plaintiff's claim that he suffered from a listed impairment, this argument is rejected.

II.     **The ALJ Failed to Properly Evaluate the Medical Evidence**

As noted above, Dr. Vega, Plaintiff's treating physician, offered the opinion that Plaintiff was limited to a greater extent than recognized by the ALJ. Specifically, the doctor opined, in relevant part, that during an 8-hour workday, Plaintiff could stand and walk "less than" two hours and sit for "about" four hours. The doctor also reported that Plaintiff required a sit/stand option and would "sometimes need to lie down or recline at unpredictable intervals during and 8-hour working shift." The ALJ afforded "little weight" to Dr. Vega's opinion. Plaintiff asserts that he is entitled to relief because the ALJ failed to provide sufficient reasons for discounting Dr. Vega's opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at

11

*2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source,

and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In discounting Dr. Vega's opinions, the ALJ simply stated that "there is no basis in [the doctor's] medical records to support these limitations, and the doctor gives no supporting findings." (Tr. 24). This conclusory statement is the only examination or analysis the ALJ articulated concerning the substance of Dr. Vega's opinions. As the Sixth Circuit has made clear, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson*, 378 F.3d at 544-47. As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

The ALJ has failed to provide *specific* reasons for his assessment of the doctor's opinions, but instead merely offers the conclusion that the doctor's opinion is not supported by the record. Because the ALJ failed to articulate any specific rationale or, more importantly, identify any specific items in the record to support her conclusion, the Court simply cannot assess whether the ALJ's determination in this regard is supported by substantial evidence. While the Court (or Defendant) may be able to identify portions of the record that support the ALJ's assessment, the Court cannot find that the ALJ's conclusion is legally sufficient based upon such after-the-fact rationalizations. Instead, as *Wilson* makes clear, the task of articulating the rationale for discounting a treating physician's opinion rests with the ALJ.

Defendant argues that the ALJ's evaluation of Dr. Vega's opinion withstands scrutiny because the ALJ's conclusion is consistent with the opinions of a consultive examiner and a State agency doctor. The Sixth Circuit, however, has rejected this particular argument. As the *Gayheart* court observed, evidence sufficient to justify affording less than controlling weight to a treating physician's opinion "must consist of more than the medical opinions of the nontreating and

14

nonexamining doctors." *Gayheart*, 710 F.3d at 377. As the court further observed, to hold otherwise would render the treating physician rule with "no practical force because the treating source's opinion would have controlling weight only when other sources agreed with the opinion." *Id.* This argument is, therefore, rejected.

In sum, the ALJ failed to articulate sufficient reasons for discounting Dr. Vega's opinion. In light of the fact that Dr. Vega's opinion is inconsistent with the ALJ's RFC determination, the ALJ's failure is not harmless. The ALJ's failure clearly violates the principle articulated in *Wilson* and renders his decision legally deficient.

**III.        The ALJ's RFC is not Supported by Substantial Evidence**

As noted above, the ALJ concluded that Plaintiff retains the capacity to perform a limited range of sedentary work. While this Court is neither qualified nor authorized to assess Plaintiff's medical condition or articulate, in the first instance, Plaintiff's RFC, the Court is likewise not obligated to disregard common sense when assessing whether the ALJ's RFC determination is supported by substantial evidence. In the Court's estimation, the ALJ's RFC determination suffers from a glaring shortcoming, namely the failure to afford Plaintiff a sit/stand option. While Plaintiff may very well be able to perform a limited range of sedentary work, the record more than substantiates that he would require a sit/stand option. This conclusion is supported by Plaintiff's extreme obesity as well as the objective evidence that Plaintiff experiences a certain degree of impairment in his lumbosacral spine. The Court finds, therefore, that the ALJ's RFC determination is not supported by substantial evidence.

**IV.       Remand is Appropriate**

The vocational expert testified that given Plaintiff's RFC, there existed a significant number of jobs which Plaintiff could perform despite his limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments). Likewise, as discussed above, the ALJ failed to articulate sufficient reasons for discounting Dr. Vega's opinion. In sum, the ALJ's decision does not comply with the relevant legal standards. Nevertheless, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court concludes, therefore, that the Commissioner's must be reversed for the reasons articulated herein and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Date: January 31, 2014                                    /s/ Ellen S. Carmody
                                                                               ELLEN S. CARMODY
                                                                               United States Magistrate Judge